**STATE of Texas et al., Appellants,**

**v.**

**Mary Josephine HAMMAN et al., Appellees.**

**No. 14096.**

Court of Civil Appeals of Texas.

Houston.

April 9, 1964.

Joe Resweber, County Atty., of Harris County, and Charles F. Mitchell and Edward J. Landry, Asst. County Attys., Houston, for appellants.

William H. White, Houston, and Bracewell, Reynolds & Patterson, Houston, of counsel, for appellees.

BELL, Chief Justice.

The State of Texas and Harris County instituted condemnation proceedings against the Houston Independent School District, the Harris County Assessor and Collector of Taxes and Mary Josephine Hamman to take the fee to slightly more than 16 acres of land lying in the City of Houston for the purpose of using it in connection with construction of facilities that would be a part of State Highway 225, which at the relevant point is commonly known as the La Porte Freeway. On trial in the County Civil Court at Law No. 2 of Harris County, after appeal by Mrs. Hamman from the award of Commissioners, the jury returned a verdict finding the market value of the land taken to be $475,290.00. The verdict also found the value of the balance of the larger tract, of which the 16 acres was a part, would be increased and therefore there was no damage to the remainder. This valuation amounts to 61 cents per square foot. The other two defendants had tax claims that were awarded to them and there is no complaint of this. The State of Texas and Harris County have appealed, asserting certain procedural errors that are alleged to have been prejudicial which resulted in a higher award being made. Appellants do not, however, contend the award is excessive.

Appellants make the following complaints through Points of Error:

1. The court erroneously admitted in evidence testimony concerning the sales price of five tracts of land because they were so small in comparison to the 16 acres that *as a matter of law* they were 'not comparable because *of size*. Appellants assert this resulted in the jury's making a higher award than it otherwise would have.

2. The court erred in admitting in evidence testimony of the sales price of a 1.22 acre tract and an undivided $\frac{1}{2}$ interest in a .51 acre tract that was conveyed by W. Carloss Morris et al to Bayou Properties, Inc., because the undisputed evidence shows it was not an arms length transaction.

3. The court was in error in refusing to give appellants' specially requested instruction that appellee had "no access, ingress or egress from the 16.713 acre tract—to the La Porte Freeway and its service roads, as such Freeway existed on July 28, 1960, as a matter of right." July 28, 1960 was the date of taking.

4. The court erred in admitting in evidence pictures of neighboring tracts that were involved in previous sales because they did not portray the properties as they existed at the time of the sales but reflected material changes in the properties.

The property involved was at the time of the taking between seven and eight miles from downtown Houston. It was located east of the Gulf Freeway and west of the Old Galveston Road. The tract would be a little east of the midway point between these two highways. It should be noted that while the 16 acres was taken to provide a facility as a part of the La Porte Freeway, the La Porte Freeway had been open and in use for several years from the Gulf Freeway to Old Galveston Road. If at the time of taking it did not actually physically adjoin a service road of the existing portion of the La Porte Freeway it was certainly very, very near it and was within the area where values were increased because of location adjacent to, if not actually physically adjoining, the La Porte Freeway or a service road as then existing.

We note that the tract is described in appellants' petition in a manner so that the northwest line of the tract is the same as the southeasterly right of way line of the La Porte Expressway [1] for a distance

1. The terms La Porte Expressway and La Porte Freeway have been used interchangeably as in the record.

of 1105.3 feet. Then there are two more calls for adjoinder with the right of way line, one for a distance of 215.4 feet and another for 110 feet. Too, it should be noted that while the distance from downtown Houston is as above stated, the tract was surrounded by highly developed areas of the City of Houston. The property, as shown by the evidence, was located in an area best suited for commercial and light industrial uses and service type businesses.

Appellants' complaint that as a matter of law, because of disparity in size, certain tracts were not comparable to the 16 acre tract, and, therefore, the price at which they sold was not admissible, involved the following tracts:

1. 3,000 square feet sold 12–4–56 by R. Rexer to George C. Brown for $4,000.00 or $1.33 per square foot.

2. 1.22 acre tract and a ½ interest in .51 of an acre sold by W. Carloss Morris et al to Bayou Properties 11–4–58 for $64,-000.00 or $1.05 per square foot. By area this represents one tract of 1.73 acres.

3. A 1.77 acre tract sold 7–24–56 by F. R. Rexer to Williams and Wagner Investment Co. for $41,000.00, or 80 cents per square foot.

4. 19,550 square feet sold 4–2–59 by August Wagner to Steel Construction Company for $8,000.00, or 40 cents per square foot.

5. ⅓ of an acre sold by F. T. Topek to H. O. Young on 2–27–56 for $7,500.00, or 37 cents per square foot.

It is significant, we think, that appellants do not contend these tracts are not comparable in other respects. There is evidence that all tracts are in the same economic environment, the sales were not too remote, the distances from the tract condemned were not too great, they had access to the La Porte Freeway or one of its service roads either by reason of fronting thereon or on a street connecting readily

therewith, and the topographic features were sufficiently similar. Appellants do not contend otherwise, nor do they contend the tracts were not sufficiently large to in themselves serve the purposes for which they were bought. As above stated, the area is suited best for commercial, light industrial establishments and service type businesses. This type of area calls for varied types of facilities including service type facilities that can use small tracts. Appellants' contention as applied to the facts here present, that size alone causes higher per square foot value, just isn't sound. If we look at the above five tracts we will see this demonstrated. They are all relatively of the same size but because of topography and location they brought widely varying prices.

■ There is no doubt the rule is that there must be a similarity between or comparability with the condemned tract and the tracts sold. However, these terms are by nature relative. Each case must be determined in the light of its facts.

■■ It is within the province of the trial court to determine whether there is such similarity between tracts as to allow testimony as to the sales price of other tracts. The judge has a great deal of discretion in making this determination. His decision that there is sufficient similarity cannot be reviewed except to determine whether there has been an abuse of discretion. City of Houston v. Pillot, 73 S.W.2d 585, C.C.A., reversed on other grounds by Commission of Appeals, 105 S.W.2d 870; Holcombe v. City of Houston, 351 S.W.2d 69, C.C.A., no writ hist.; Joyce v. Dallas County, 141 S.W.2d 745, C.C.A., no writ hist.; Cole v. City of Dallas, 229 S.W.2d 192, C.C.A., ref., n. r. e.; City of Houston v. Collins, 310 S.W.2d 697, C.C.A., no writ hist.

It may also be observed that here testimony concerning sales of other property was really permitted so as to show some of the factors taken into consideration by the expert real estate appraisers in reach-

ing their conclusion as to market value. While there was no limitation placed by the court on the testimony, it is obvious to us from reading the record that the various expert witnesses' testimony concerning sales prices of other property was based on information they had obtained from investigation and not their personal knowledge. Their testimony as to sales price could not, therefore, be used as substantive evidence of what those prices were and, therefore, the jury could not use those prices as substantive evidence. We state this because where the sales price of other property is introduced as original substantive evidence the rule requiring comparability is stricter. United States v. Johnson, 285 F.2d 35 (9th Cir.).

■ We cannot say, as a matter of law, that the above mentioned tracts were not comparable to the subject tract.

■ We are further of the view, in the light of the whole record, that even if it were error to admit the sales prices in evidence, no harm is shown. Rule 434, Texas Rules of Civil Procedure. It will be remembered that the value of the subject tract amounted to 61 cents per square foot. Only three of the sales above complained of exceeded this amount found and two were below the amount found by the jury for the subject tract. Further, it is noted that the sale of three other comparably small tracts, the sales price of which appellee introduced in evidence, showed a value of 76 cents, 53 cents and 63 cents per square foot. While appellants point out in their brief and argument they objected to such testimony, there is no point of error here making such complaint. Further, the testimony is undisputed that up to the time of taking there had been a continuous increase in values in this area. Too, there were some 24 other sales also introduced in evidence and they involved varying sizes of tracts. One, for instance, was a twelve acre tract that in 1956 sold for $1.05 per square foot and in 1958 it sold for $1.28 per square foot.

The award arrived at by the jury, while well in excess of the value given by appellants' witnesses, was well below the valuations made by appellee's witnesses.

Appellants complain that the sale from W. Carloss Morris et al to Bayou Properties, Inc. was not an arms length transaction. This involved a 1.22 acre tract and an undivided ½ interest in a .51 acre tract.

■ When this evidence was offered objection was made to its introduction. However, Mr. Jungman, a witness for appellee, testified he discussed the sale with the buyer and seller and determined the buyer and seller were not the same. There is evidence to the contrary. The trial court having determined the matter of admissibility on conflicting evidence, we may not disturb his determination. City of Houston v. Cambeilh, 333 S.W.2d 192, C.C.A., ref., n. r. e.

Appellants assert the trial court erred in not giving their specially requested instruction to the effect that the subject property did not have access to the La Porte Freeway and its service road as a matter of right. Their theory is that in 1951 appellee and her husband had conveyed the 9.690 acres of land adjoining the subject tract on the north. They say since the conveyance was in fee simple and was presumably conveyed to the City of Houston for the purpose of constructing thereon a portion of the La Porte Freeway and reserved no right of access, appellee conveyed away her right of access. Another facet to this point, as we understand it, is that at the time of the sale in 1951 and the subsequent opening of the La Porte Freeway there was no existing street adjoining appellee's property and she therefore had no absolute right to access to the Freeway or its service road when they were constructed.

The basis of this contention is Article 1085a, Vernon's Ann.Tex.St., which provides in substance that a city may acquire property within its limits to use in con-

structing freeways and may designate existing streets as freeways providing existing streets may not be so designated without the consent of abutting property owners unless the city acquires the owners' right of access by purchase or condemnation. The same Article defines a freeway as a highway or street in respect to which the right of access to or from abutting lands has been acquired in whole *or in part* from the owners.

At least two of appellee's witnesses had appraised the subject property based in part upon the consideration that it had access to the existing portion of the La Porte Freeway by way of a service road. Appellants' witnesses, except for one, has based their appraisal in part on the consideration it did not have any such access. Two of appellee's witnesses testified the tract did as a matter of fact have access to the freeway by way of one of its service roads. One of them expressly testified he had discussed the matter with the City of Houston and State Highway Department representatives and they had assured him the tract did have access to a service road. One of appellants' witnesses also testified the tract did have access to the Freeway by way of a service road and he considered such factor in making his appraisal. It is also noted that in Exhibit 10 introduced by the appellants, which was an aerial photograph showing the then existing part of the La Porte Freeway and adjoining properties, a service road is shown immediately in front of the subject property. The same exhibit shows service roads on either side of the Freeway all the way from the Gulf Freeway to the eastern side of the subject tract. There is testimony that there is no fence between the subject tract and the service road such as is usually built by the public authorities to cut off access. Too, there is testimony that other tracts up and down the La Porte Freeway are exercising the right of access to the service roads adjacent to them. We particularly note these evidentiary facts because they are sufficient to show that the public author-

ities, if they have the right to deny access, are not exercising the right but have a policy along this Freeway of making it accessible for all adjoining properties. There is testimony that the very purpose of service roads is to give adjoining properties access to the Freeways. Note also that the statute defining "freeway" defines it as a street or highway in respect to which the right to access has been acquired from the owner in whole *or in part*.

Appellants urged that appellee, through counsel, stipulated she had no access. We do not think the stipulation made by counsel is in reason subject to such construction. Appellee's counsel merely stipulated that appellee and her husband conveyed the 9 acre tract described in the deed of 1951 to the City of Houston by a general warranty deed conveying fee simple title. Immediately following this stipulation counsel for appellants stated to the court and jury that *his purpose* in offering the deed was to show the City owned a fee simple title and "that there is no access to this tract of land to the La Porte Freeway as it exists presently." Nowhere did appellee's counsel agree or stipulate that appellee did not have access. Throughout appellee was contending as a matter of fact her land did have access to the service road.

We assume that under the statute and facts present appellants could legally deny appellee the right of access but under all evidence they had not done so and were as a matter of fact allowing owners of property abutting on service roads along the La Porte Freeway to exercise a right of access.

 The court did not err in refusing the specially requested instruction. It was not substantially correctly worded as required by Rule 279, T.R.C.P. It was incomplete and as presented constituted a comment on the weight of the evidence. The rule applicable is that announced in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; and State v. Reece, 374 S.W.2d 686, C.C.A., no writ hist. Where property

is legally subject to a restrictive use but evidence shows in reasonable probability that such restriction will in fact be removed within the reasonable future, the jury in appraising testimony as to value and in determining value may consider such fact. The principle as applied here, in the light of the evidence developed, would call for the court, on proper request, to in effect instruct the jury that the City of Houston and the State Highway Department had the right to deny appellee the right of access to the service road, but these authorities also had the right to permit access, and that in determining the value of the tract taken and in appraising testimony they could consider whether at the time of taking these authorities had denied appellee the right of access or had permitted access and whether in reasonable probability had the tract not been taken these authorities would have in the reasonable future permitted or denied the right of access.

Finally, appellants urge as error the action of the trial court in admitting in evidence Defendant's (appellee's) Exhibits 18, 19, 20, 22, 26, 28, 29, 30 and 31. These exhibits were photographs taken by Mr. Hawk an expert witness on value for appellee. The pictures were all taken in August or September, 1960. Exhibit 26 was a picture of the Southeast Y. M. C. A. Building on the Freeway that had been built on one of the tracts that had been sold and the sale price of which had been introduced. The building had been constructed between the time of the sale and the date of taking the subject tract. The picture was offered to show how the area was developing and to evidence use to which land in the area was adaptable. It reflected relevant information and was admissible.

■ Without noticing each of the other exhibits, it will suffice to say they were pictures of various tracts of land in the area that had been sold prior to the date of taking of the subject tract. Testimony had been given as to sales price of each tract and some description of the tracts, including the topography. The tracts pictured had been orally described, in varying degrees, as being in part low and irregularly surfaced land. Part of the subject tract, though a relatively small part of it, was low and irregularly surfaced. The pictures, it was made clear in the record, were not taken at the date of the sale of the particular tract portrayed and were not introduced for the purpose of showing the condition of the particular tract at the time of sale. Some of the pictures showed substantial improvements that were on the land at the date of taking. These obviously were admissible to show the fact and type of development in the area of the subject tract. Others of the pictures showed how fill had been used in low places on the tracts that had been orally described so as to make them usable in connection with the improvements that had been made. The pictures were all relevant to show development in the area and how even low land, such as a part of the subject tract could, by the use of some fill, be made readily usable.

The judgment of the trial court is affirmed.