**CENTRAL POWER & LIGHT COMPANY,**
Appellant,

v.

**Etalka F. WEDIG et al., Appellees.**

No. 709.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 27, 1972.

Rehearing Denied Oct. 19, 1972.

Anderson, Smith, Null & Stofer, James N. Stofer, Victoria, for appellant.

Lawrence A. Dio, Port Lavaca, for appellees.

## OPINION

NYE, Chief Justice.

This is an appeal from an eminent domain proceeding brought by Central Power & Light Company to condemn a 2.172 acre strip easement (approximately 50 feet wide) out of a 139.36 acre tract for purposes of establishing a high voltage electric trans-

mission line over defendants' property. Based on jury verdict the trial court rendered judgment awarding compensation to the defendants in the sum of $15,014.00. The plaintiff appeals.

The defendants' property is located in Calhoun County, Texas, in a rural area just off Highway 35. The property is used predominately for farming operations. The plaintiff seeks to condemn an easement along the edge of the defendants' property. The easement strip taken, coincides with a private all weather black top road running along the border of the defendants' property for approximately 3,200 feet. This road was used by the defendants and their tenant extensively. The evidence showed that three power transmission line towers were erected by Central Power and Light on the road. These towers interfered with the movements of some of the farming vehicles belonging to defendants. Smaller vehicles could use the road and pass between the legs of the transmission line towers, but large farm equipment experienced difficulty in that they had to wind on and off the road to avoid the support towers of the transmission line.

The jury found the reasonable market value of the 2.172 acre strip with the improvements situated therein before the appellant acquired the easement to be $29,968.00 and after the acquisition of the easement to be $14,954.00. The jury found the reasonable market value of the 137.19 acre remainder to be the same before and after appellant acquired the easement, hence no damages to the remainder.

Appellant's points one and eleven through thirteen complain in effect of the jury's answer to the before and after value of the easement strip taken. First, appellant complains that the testimony of a certain witness dealing with the cost of replacing or building an entire new road on defendants' property was improperly admitted by the trial court. This point is overruled.

Defendants' property was shaped so that its only practical entrance was through a narrowed area. From this entrance and along almost the entire one side of the farm was a road with a 12-foot black top center section. The defendants used this road for combines, grain trucks, cotton pickers and other farm equipment. Along one side and a part of the improved roadway was a drainage ditch that drained a substantial portion of defendants' farm. Three electrical transmission towers were placed in the road so that the large farm equipment could not go under the towers but would have to circumvent them. The evidence was that during wet weather the equipment might get bogged down going down into the drainage ditch and around the towers. There was testimony that to build a road around the towers would interfere with the natural drainage of the farm as it now existed. The present system of drainage had worked very well on the farm for many years. There is no question that by placing the towers on defendants' road there was a taking of defendants' improvements by the appellant, at least to some extent.

The witness in question was employed by a road building company as its superintendent. He was qualified as an expert. He tested the road in question by boring holes and by making other tests. He was asked this question:

"Q Do you have an opinion as to the value of that road as it sits.

A Yes, sir."

Objection by appellant's attorney.

"O.K. we renew our objection, your Honor, that there is no necessity shown for a new road and that a new road would be a betterment."

The Court: "Overruled."

The witness then testified that the value of the road as it now stood was $29,000.00. He went on to testify that the road could be bulldozed up and the material moved

over, although this was not a feasible thing to do, price-wise. He then testified that another road could be built alongside the present road away from the towers utilizing the present shoulder of the existing road, for the sum of $23,196.00. The witness further testified that although this was an old road, the stability of such a road would be better the older it was. He testified that the longer you use a road the more it becomes compacted. Whereas, if a road just lies dormant, it soaks up water and naturally becomes soft. He testified that the drainage ditch along the road as it presently stood for many years, drained the property very well. The witness stated that if a road drains well, it helps preserve the road, and the maintenance of such a road is less.

The only requirement for admissibility of the testimony of an expert is that he must be shown to be qualified to testify as to the subject which he is called upon to testify about. The Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936) on motion for rehearing, 126 Tex. 604, 89 S.W.2d at page 980, stated:

"It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose. As an alternative, however, if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder. . . ."

The Carpenter opinion went on to say:

"This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases. . . If in the exercise of a sound discretion the trial court should find that just compensation, from the standpoint of the condemnor as well as the owner, cannot be arrived at without directing attention to specific items of damages, either by instructions or in special issues, such action need not necessarily be erroneous, so long as a double recovery is avoided and undue emphasis is not placed upon some specific item of damages or injury."

■ The jury was asked the value of the strip taken before and after it was burdened by the easement. They were instructed in arriving at the market value to consider such improvements as may be on the land as a part of the land but only to consider such improvements to the extent that they increased or enhanced the value of the land taken. Appellant's contention that there was no evidence to support the jury's answer of $29,968.00 to the strip of land before the easement was taken and its answer of $14,954.00 after the taking is without merit. Another of defendants' expert witnesses testified that the value of the strip before it was taken was the exact amount found by the jury. In this connection he placed a value on the 2.172 acres taken at $400.00 per acre for a total of $868.00. He valued the all weather road that exists in the easement at $29,000.00 and a drain pipe under the road at $100. He testified that after the taking the land burdened with the easement would be reduced in value to $6,455.00. He calculated a loss of 80% to the all weather road when burdened with the easement.

■■ In Texas there is no substantial difference in the admissibility of evidence as between market and intrinsic value evidence so long as such evidence bears upon the ultimate market value issues of the land before and after the taking. Ray-

burn's Texas Law of Condemnation, § 116. Although the road as such had no specific market value, its intrinsic value as an improvement to the land went to the total market value of the land which was taken by condemnation. We hold that the trial court did not err in admitting all of such evidence.

■ Appellant's expert witnesses testified to a higher value to the actual land, but did not attribute any value to the improvements (i. e. the all weather road). They valued the part taken at $950.00 and $977.40. Their testimony was that the land burdened by the easement after the taking would depreciate the value of the land taken by approximately 50%. The jury's answer to the value after the taking was about 50% of the value they placed on the land before the taking. The jury was at liberty not to believe portions of the evidence by certain witnesses and were at liberty to accept in part and reject in part the conclusion of other witnesses. The answer of the jury on the issue as to the market value of the property taken, burdened with the easement was within the limits of the market value testified to by the various expert witnesses. Appellant's no evidence and insufficient evidence points are overruled.

■ Next the appellant complains that the answers by the jury to these issues of before and after value, are against the great weight and preponderance of the evidence and are grossly excessive under the evidence. Defendant's expert witness testified to the value of the part taken including the road improvements situated thereon. Appellant's expert witnesses attributed no value to the road improvements. The evidence is undisputed that the all weather road improved the property of the defendants. It provided a way for the farmer's equipment. It helped to afford a proper drainage for the farm. The market value of the improvements was for the jury to decide from the evidence. The answers by the jury to these issues included the value of the improvements. Therefore, the pre-ponderance of the evidence is not against the jury's finding as to the value of the easement strip including the improvements. Since appellant's experts attributed no value to the improvements whatsoever, the jury's answer is not against that which is undisputed. These points are likewise overruled.

■ Appellant's second point is as follows:

"SECOND POINT: The Trial Court erred in overruling Plaintiff's Motion to Strike Testimony and for Mistrial, because there is no evidence of any loss or damage to the entire existing road, such testimony would result in a betterment to Defendants, and there is no showing that the existing road enhanced the market value of Defendants' property."

This point of error is multifarious and should not be considered. Rule 418, Texas Rules of Civil Procedure. However, we believe that if we were to consider all of the questions raised in this point, they have been answered hereinabove.

■ Appellant's third point complains that the trial court erred in refusing to admit into evidence certain photographs. These photographs were offered for the purpose of showing that appellant's electric transmission lines did not interfere with television and radio reception. Since the jury did not find any diminution of market value to the remainder of the defendants' land, any error in refusing to admit the exhibits was harmless. Rule 434, T.R.C.P.

■ Appellant's points four through ten complain of jury argument. We have considered each and everyone of these points carefully and do not find reversible error. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (Tex.Sup. 1954); 3 Texas McDonald's Civil Practice, § 13.05.1–13.09.4; 22 Tex.Jur.2d, Eminent Domain, § 306 and § 307, pp. 430–431 and authorities cited therein. The appellant here has failed to show that such argument caused or probably caused the rendition of an improper verdict. Rule 434, T.R.C.P.

Judgment of the trial court is affirmed.